Our first case today is Lena Davenport v. Borough of Homestead et al. Mr. Hasselbarth? Yes, sir. Good morning, and may it please the Court. Shane Hasselbarth on behalf of the Police Officer Defendant's Appellant, and I would like to request three minutes for rebuttal. Granted. Thank you. If a police officer fires his gun at a fleeing robbery suspect and inadvertently hits an innocent bystander, there has been no violation of the Fourth Amendment. If, on the other hand, a police officer fires his gun directly at an innocent bystander under the mistaken belief that he or she is the suspect, then a seizure under the Fourth Amendment has taken place. That is how this Court described the law in Burke v. Allegheny County in the year 2000, and there has been no change since then. The District Court concluded, noted rightly, that Ms. Davenport was, quote, not the suspect in this case. That is at page 40 of its opinion. Nevertheless, the District Court relied on Brendan v. California to hold that she was seized when the police officer shot at the driver, Mr. Burruss. Brendan v. California, of course, held that all passengers in a vehicle are seized when a police officer pulls the car over to the side of the road. And Justice Souter's opinion for the majority in that case came to the common-sense conclusion that a reasonable person in the passenger seat of a vehicle would not feel free to terminate the encounter when the vehicle is pulled over by a police officer. But it is an entirely different question whether a passenger is seized when she is accidentally shot at a bullet no doubt aimed at the fleeing driver. Don't we need to separate the actions of the various officers here rather than treat them all the same? Yes. So let's start with Officer Gorecki. Don't we particularly have to do so, if I can add something to that, on the question of jurisdiction as to whether we have jurisdiction on this? This Court does have jurisdiction. The District Court clearly held that a reasonable jury could find under these facts that the police officer violated constitutional rights. That is a finding that qualified immunity should be denied and constitutional rights were violated if the plaintiff's version of the facts is true. That is a proper subject for appeal because we're not asking this Court to review whether the District Court properly determined the facts, but whether its legal conclusion was correct, whether those facts rise to the level of a constitutional violation. I see no impediment to this Court's jurisdiction. What about Officer Gorecki? What about him specifically? Is there at least on the record a factual question as to where the car was when his gun was discharged? Well, there's not a question where the car was. There's a video of that. It's a question of whether the car posed any danger at that time. The car, I mean, watching the video, the car appeared perhaps, at least arguably, to be no longer a threat to pedestrians on East Carson Street. Right. And this was at the end of a five-mile chase that the It doesn't matter what happened before. What matters is what happened at the time he fired. Sure, but this year the Supreme Court in White v. Pauley held that a police officer arriving late to the party is free to assume that proper police procedures have taken place before his involvement began. And so what happened here was But that doesn't change the fact that if the car I know you don't accept this version of the facts, but I think in this posture Well, it's your Court, not mine. Right. But in this posture we have to accept that there's a possibility Maybe you don't, but I think you have to accept that there is a possibility that, based on the video, that if the time officer directly fired, two shots I think, the car at that time no longer posed a threat. It had already been disabled. I'm not going to put my eggs in the basket of the video doesn't show the gun kickback. I don't see it, but that's not my argument. What happened here is that the vehicle driven by Mr. Burris is pinballing off vehicles on East Carson Street. And the video shows pedestrians literally jumping out of the way Not when Gorecki fired. At the time the car enters the screen on the video. And then it crashes into the classy cab, and that's when Gorecki's involvement is taking place. He's the last in the chain. He's not a second incident or a later incident. He's simply the last one before Mr. Burris crashed, not because he failed to stop under the commands of police. I mean, he simply crashed and Officer Gorecki was there. And he also jumps in front of the vehicle to get on the driver's side. And it's a big argument for Ms. Davenport that these officers were on the passenger's side. But Officer Gorecki moved to the driver's side to neutralize the threat. And as you say, he fired two shots and the threat was neutralized by the crash. Was the car disabled by the crash? The car was stopped by the crash, and there's pictures in the supplemental appendix that show massive damage to the front end. I believe it was disabled, yes. So there's a big factual dispute about whether he fired Gorecki before it was disabled or after it was disabled. If it was before, then you may have a good argument under Scott v. Harris or Plumhoff v. Ricard. On the other hand, if he fired after it was disabled, I don't see how those cases help you. Sure, and that is a fair parsing of the facts of the case, that when we get to the end, for the question of shots fired after the stop, if there's a genuine issue of fact preventing summary judgment there, then that's this Court's conclusion. But we're here on the case as the four officers, and so if you're finding that the last officer has some legal problems that prevent summary judgment, that's okay. That doesn't change his actions prior to that, you know, last shot and the other three officers before him. All right, I think the question that Judge Hardiman asked initially was, don't we have to evaluate the actions of the other three officers individually? And I'd like you to turn to Officer Schweitzer, who was the first in line on Carson Street. Yes, he was between 16th and 17th on Carson Street, and he engaged the Burris vehicle right after Mr. Burris failed to heed the command of police to stop his vehicle after he ran a red light, and after he crossed the center line and drove the wrong way on Carson Street, specifically to avoid stop strips. And so this is a person failing to heed the commands of police to stop his vehicle, and the police engaged him. That is exactly Sacramento versus Lewis. The driver of the motorcycle came upon police on the scene. They commanded him to stop. He didn't stop, and they initiated a pursuit. This is a parallel case. The engagement of police with the Burris vehicle was not constitutionally problematic under either the Fourth Amendment or the Fourteenth Amendment. And again, I appreciate you want to look at the individual officers, as you should, but we should also look at the individual occupants of the vehicle. They were engaging Mr. Burris and his reckless operation of the vehicle. Ms. Davenport was accidentally struck by a stray bullet. In the words of Berg versus Allegheny County, inadvertently struck. And for that reason... From Plumhoff, there was a passenger as well, right? Yes. And the Supreme Court... So what's the teaching for us from Plumhoff then with respect to the fact that the plaintiff here was a passenger? In Plumhoff, that was decided, of course, in 2014, one year after the events in this case.  Language from two courts of appeals going one way, that a passenger does have a Fourth Amendment seizure claim, and language from two courts of appeals going the other way, that a passenger doesn't. So Judge Chacon didn't have the benefit of Plumhoff when his decision was rendered? He didn't, but that doesn't... So should we just remand the case for rehearing in light of Plumhoff? No, because this is a legal question, and the district court is in no better position than you are to determine whether constitutional rights were violated under undisputed facts and whether the law was clearly established at the time of the incident. I note that in that same footnote four, Plumhoff noted the circuit split, but then cited its own Sacramento v. Lewis case, which held that a passenger injured by police activity towards the driver has no Fourth Amendment claim. And so Sacramento analyzed it under the Fourteenth Amendment. When Officer Schweitzer first, or when the Burris vehicle approached the intersections of Carson and 17th, what made at that juncture the Burris himself a dangerous suspect? Well, my argument doesn't need him to be a dangerous suspect. My argument needs to justify the police engagement of him. And what justifies that is his running a red light and failure to heed police, a police command to pull his car over. The Homestead police initiated a police stop, and he failed to stop, and so they initiated a police pursuit. What does the record show as to his approximate speed at that intersection? I believe it was 45 miles an hour. And somebody who doesn't wear body armor and has children, I think that's pretty fast in a highly populated bar and restaurant district, especially at night. And if you don't, your law clerks can pull it up on Google Street. You can see how narrow this street is. I'm familiar with it. Think about this car flying in there at 45 miles an hour at a time when the district court recognizes it's highly populated. Now, we don't have video of the entire track, but at the end you can see people jumping out of the way. And so the engagement of Officer Schweitzer did not violate either the Fourth Amendment or the Fourteenth Amendment. Remember, the standard here is shock the conscience. The district court stated that these officers were reckless and consciously disregarded the danger to Ms. Davenport. Sacramento v. Lewis determined a conscious disregard to be a mid-level of fault between negligence and a shock the conscience standard. And it held that police officers weighing two competing interests, the desire to stop a suspect and the possibility of danger to suspects and their passengers. Remember, that was recognized in the Lewis case. There's a passage in there referenced the danger to passengers. And the Supreme Court held that a police officer in circumstances calling for non-deliberative, quick, reactive activity doesn't shock the conscience when he engages a suspect. And I just want to point out, you mentioned the speed, Judge Fischer. The district court notes that this chase began at 1.38 a.m. And the brief of Ms. Davenport on appeal states that paramedics got to her at 1.47 a.m. That's nine minutes from running a red light to the paramedics being on scene. This was a highly dramatic and fast chase into a highly populated area of Pittsburgh. And so we ask this court to vacate the denial of qualified immunity. All right. Thank you, Mr. Hazelbarth. We'll hear now from Mr. Lewis. Good morning, Your Honors. May it please the court. Initially, this case involves not an accidental shooting and not a high-speed chase. I'd like to start where Mr. Hazelbarth left off. Your question, Judge Fischer. How fast was the Burris car moving at the time Officer Schweitzer unloaded four bullets into the passenger side of the car? Well, in his deposition, he said he first saw the car 25 yards away, 75 feet. He's standing at the intersection of 17th and East Carson. He's got the cars backed up in the inbound lane. He stopped traffic. At the intersection of 16th Street and East Carson, Sergeant Ripple has the traffic backed up.  Remember, Commander Perry has already told all these officers, and they all admit that the chase has been terminated well before this point. They all have heard it on their radios. It's their testimony. It's a well-lit area, extremely well-lit. Everybody agrees on that. But in any event, he stops the cars. He stands in front of the stopped lane of traffic. He sees the vehicle 25 yards away, 75 feet. I ask him what happened next. He said he unholstered his gun, took about two seconds. The cars at two seconds. He then unloads four shots, one directly in the passenger side door, just under the door handle. Robert Levine, the criminologist, testified as to all four shots. Now, a car traveling 75 feet at 20 miles an hour would be past him. A car traveling at 20 miles an hour would be covering 30 feet a second. This car is 75 feet away from him. He's been told to let the man go. The Homestead officers testify, yes, the chase started in Homestead, which you know is about five miles away from the point where this happened. But the car did not travel more than 40 miles an hour, 45 miles an hour, down East Carson Street. It was a slow-speed chase. Why does the slow speed matter in light of Plumhoff? And I know the district court didn't have the benefit of Plumhoff. Yes, sir. But the shooting in Plumhoff occurred when the car wasn't even moving. Well, the car was spinning in Plumhoff, and the guy is- Spinning in place. Yeah, in place. Yeah, and now- He was in danger. Well- The driver. The driver here was active. He was driving a motor vehicle, and he was driving it across the yellow lines, the double yellow lines. We see that plainly on the video. We see pedestrians running out of the way as he's coming down East Carson. That's a lot more dangerous to the public than a car that has its wheels spinning, that's wedged between two cruisers, is it not? You're absolutely right, Your Honor. But in this case, when I talk about Schweitzer, at the point, it's the knowledge that the officer has, of course, at the time that he engages in applying deadly force. At the time he did it, the car is moving, obviously, in the wrong lane because it's passing some cars to get around the intersection. But it's traveling at the same speed it would be in a school zone. Now, at that point, Officer Schweitzer fires at the car deadly force. It's not-clearly, at that speed, it's not endangering anybody. Well, at that time, but that's my point. Under Plumhoff, the Supreme Court's decision, I think, requires us to take all of the facts and circumstances of the chase into account because if Plumhoff just looked at what happened at the time the shots were fired, it would be very consistent with the argument you're making now. They would say, well, wait a minute. This car was spinning its wheels. It wasn't even going anywhere. The officers had no right to shoot at the vehicle, but the Supreme Court said precisely the opposite. Well, that's true, Your Honor, and it was spinning its wheels. But this man in Plumhoff, it was a high-speed chase, and he was desperately trying to get out of here. At this point, in this case, it's the knowledge of the officer and what degree of force should be applied at the time. I agree as it proves wrong. Just stay on that microphone. I'm sorry, because it's being recorded, so sorry. Excuse me, Your Honor. No problem. But in this case, it's the knowledge the officer has at the time when he applies the force. Is it a valid? And did the officer know that this had been a five-mile chase? What exactly did the officer know at that time? All he knew is that the chase had been called off by his commander. So he knew there was a chase of unspecified length. He didn't know that it originated in Homestead or anything? I don't believe this officer testified he did. Okay. Now, the facts change. The facts change once he gets past 16th Street and Madakovich and Kennedy interact with the vehicle, do they not? Yes, they do. Okay. Now, after this car has come down East Carson Street and has had four shots fired at it by Officer Schweitzer and then switches lanes and does what it does and continues to go, you know, why isn't it reasonable for Madakovich and Kennedy to believe that there's a risk of harm to everybody who's, including themselves, who's nearby on East Carson Street? At that point, it's clear that Madakovich says the car's pinballing, but the crash report indicates at page 91 in the supplemental index, the crash report indicates that the car wasn't pinballing until it got past Madakovich down into after Madakovich shot four times and Officer Kennedy shot once. It started to pinball down around 15th Street and 14th Street past them. But Madakovich also says that he saw his bullets hit the windshield of the car. There is no bullet damage in the windshield. He said he shot at the driver. Remember, those cases talking about shooting a driver and the seizure, this case involves, we're saying, an intentional shot at the passenger, willful shooting at the passenger, who has no- But not at the driver? But not at the driver. Because the forensics show a picture of the bullet hole at the passenger side, where Schweitzer was, directly below the front passenger door handle. It's completely round. And I asked Dr. Levine, head of the criminal lab at Allegheny County, where was that officer when he shot? He said he was directly perpendicular to the passenger door. The officer said himself he was three or four feet away. Now, can an argument be made that you can shoot directly at the passenger in order to stop the driver, who is the source of the danger? An inadvertent shot, maybe, but there's a genuine material issue of fact. Whether Schweitzer shot at the passenger doors and- I thought it's a given fact that he shot at the passenger door. What's not a given is what was in his mind at the time he shot at the passenger door. Well, his motivation, we have to look at it objectively. And that's why I was surprised when you said he was trying to shoot the passenger, not the driver, because objectively, common sense would indicate that an officer trying to stop a vehicle fleeing from the police would actually try to stop it by shooting the driver, not the person that's not driving the vehicle. Well, he claimed he tried to shoot at the driver in his deposition. He said he aimed at his chest. And if he's on the passenger's side of the vehicle at the time he shoots, necessarily the bullet would travel through the passenger compartment before it got to the driver. Yes, passing through the passenger or her eye, as it did in this case. Because, remember, he says he's four or five feet away, and we have evidence that it's well lit. One witness right in the shooting area, it's in the survey plied brief, sees a male driving and a female passenger. So that shot was reckless. It was the application of force without any basis in fact or in law, but in fact, basically, that Schweitzer should not have discharged his weapon at that point. The speed of the car was very slow, as I said, in schools. What about what Judge Fischer was asking about Matakovich and Kennedy? Well, Matakovich and Kennedy is a different case for those two. And the testimony of Matakovich, though, is so contrary to the record and the facts that one may not believe it because he says he saw the bullets spinning and then he saw them hit the windshield in an effort to show he was shooting right at the officer. And the car was pinballing, as I said before, as he saw it coming from 17th Street, where Schweitzer was. But neither of those facts are true. The crash report, which is in the appendix, shows that all the damage occurred after they passed these two guys. But doesn't the video show that the car was driving in the wrong lane at least twice? It was afterwards, after they had fired eight or ten shots at the car. It only traveled in the wrong lane after Matakovich and Kennedy fired their shots? It was in the wrong lane when it pulled into the outgoing lane, which was the wrong lane to pull around the cars that Schweitzer had stopped. But then it returned to its proper lane as it headed towards Matakovich and Kennedy. And at that point – I guess I'm struggling, Mr. Lewis, with – the implication, I think, of your argument is that we need to divide up the conduct into small pieces. And I'm struggling with that because if you think of Scott v. Harris, for example, have you seen the video in that case? Yes, Your Honor. So the police officer – it was high speed, which is different than this case. But what's sort of striking, perhaps, about that case is at the time that the officers pushed the vehicle off the road by force, there's no one around. They're in the middle of the country. All you see are woods, right? And apparently the Supreme Court allowed that conduct because of a lot of the things that had happened previously, namely running red lights, high speed. So the guidance, I think, from that case is that you have to look at the conduct as a whole. And that conduct as a whole in this case would include not some 500-yard elusive action, but a five-mile pursuit involving multiple police departments. And sometimes the car was not a danger to anyone, but other times you see citizens running out of the way, you see the car driving across the yellow line. So don't we have to consider it holistically, except for Gorecki, in the sense that I assume you're going to tell us that the car was totally disabled. Yes, Your Honor. Even Plumhoff said if it's disabled, there's no danger. But I just go back to these other officers. It's only the knowledge they have. And in all those cases, there was not an order from their commander to, hey, do not stop these people. Well, they don't need an order, though. They just need to know what's happening, right? Yeah, that's true. I mean, once the vehicle began to careen down East Carson Street past 17th, the circumstances that precipitated the order from the commander changed, at least it seems to me. Yes. Your Honor, I would say that obviously you have to protect the officers, have to protect themselves. And the bystanders. And the bystanders. So there's a risk of harm out there. There is. It certainly doesn't make the conduct of the officers, at least Maddock, Coburn and Kennedy, unreasonable. Your Honor, their conduct as to shooting at the passenger, that's the other issue with it. But how do you – let's stop at the passenger there. Let's focus on the passenger. Even if they saw the passenger, even if they knew that there was a passenger in the car, okay, what law is there that says that directs an officer's conduct and determines whether it's reasonable or unreasonable when you balance the risk of harm to the people in the area versus the risk of harm to the passenger? I don't know of any case law on that. No, there isn't, Your Honor. Doesn't that, at least as to some of these officers in some of this factual situation, mean that the law is not clearly established? And if we have jurisdiction, the officers here are entitled to qualified immunity. Judge, I would think it's obvious that an innocent party, a passenger, the same as a bystander, is entitled to the same standard of conduct from an officer because she's innocent. Yeah, but what's an officer to do in that situation when he's trying to balance the risks at 1.30 in the morning? Yes, Your Honor. I understand that the position is vague as to the two officers that shot in between 17th and the final crash. But I submit that Mrs. Davenport, if the facts show that an officer intentionally shoots at the party, as Gorecki did, it's a violation of not only the Fourth Amendment, but under those circumstances, even against the driver, it's a 14th Amendment claim, too. Was there any effort to find out from which gun the bullet that killed Mrs. Davenport came? Well, the forensic expert said that the shots were all from the police clock weapons, and that is the best evidence in the case, that all the bullets were in the sides of the car other than a hood shot from the side, and they were all from clock weapons. They recovered a fragment from her brain, which they could not identify, but it's clear that they were the only shots fired. Now, which officer shot her? More likely than not, it's the first or the last shot, but we don't know. That's the best we can do. Thank you, Mr. Lewis. Rebuttal, Mr. Hazelbarth? Yes, just a few points. The shots entering the Burris vehicle on the passenger side, Judge Fischer, as you noted, it was because he crossed the center line. Mr. Burris said it. In the Plumhoff case, the court said it would be perverse if the suspect driver could use his own endangerment of his passenger to his benefit in a 1983 case. I submit it is equally as perverse to allow Mr. Burris's placing of his own mother between him and the police to work against the legal claims of the police in this case. Well, there's no indication that he placed her there to protect himself, is there? No, but he did cross the center line, and so just geometrically, she is between them and the police, and that's why the bullets are entering the passenger compartment and the hood. In Landall Rivera, that's a First Circuit 1990 case, one of the ones that Berg v. Allegheny cited, the court noted that if a fleeing suspect had a hostage in the passenger seat who's hit by a bullet, the hostage would not have a Fourth Amendment seizure claim. It's equally true that if the person's not a hostage but simply not the target of the police activity, as the district court recognized, with Mr. Davenport not being the suspect, there's no Fourth Amendment seizure. And again, in the Landall case, the court held that there is no Fourteenth Amendment claim as well. The statement by Mr. Lewis in his argument was that the shot taken was reckless. That's all we need to win this case. A reckless shot taken at mid-level of fault does not rise to the level of conscious shocking under Sacramento v. Lewis. This does not negate any state law negligence claims or any state law punitive damages claims for recklessness. All we're here on is the 1983 claims. But if the car was disabled at the time Gorecki fired, you would have to concede that that's an actionable constitutional tort. Yes, and so... And so you need to, in order to win on behalf of Officer Gorecki in this appeal, you need to persuade us that the district court erred when it found that there is a material issue of fact in dispute about whether or not that car was dangerous at the time Officer Gorecki fired. What the district court concluded was a genuine issue of fact was whether the shot taken was reasonable. And our argument here is that there is no seizure and that the shot taken doesn't shock the conscience. Well, maybe the district court got it right for the wrong reason, though. I mean, as to Officer Gorecki. Sure, I do think this case... Where is there no... You have to show us, I think, that there's no issue of fact about whether that car posed a threat at the time Officer Gorecki fired. Even though we need to parse the facts and analyze each actor in this story individually, we do not need to analyze them separately. Officer Gorecki was at the end of the line during this chase after Mr. Burris crossed the center line and hit vehicles and endangered people. And so his conduct taken was at the time the chase came to an end. We do not want the law to be officers second guessing their decisions to engage suspects. You know, in other words, we don't... The law does not require... No clearly established law requires Officer Gorecki to hold back and see if Mr. Burris is going to continue on. The law encourages, and we as a society encourage Officer Gorecki to make sure the threat to society is neutralized. Here it was. Unfortunately, Ms. Davenport was injured in that process. But no clearly established law... You just said the threat was neutralized. Yes. And it all depends on the timing of when that threat was neutralized vis-a-vis Gorecki firing his weapon. Right? I mean, if the threat is neutralized, if it's over, if it's over, a police officer can't go up and shoot people. I agree with that. But if it's not over, see Plumhoff, then the officers can shoot. And all the judge said here is there's a material issue of fact and dispute as to whether this was over at the time Gorecki shot. And if this court agrees with the district court, then the opinion should read that there's qualified immunity for everything but the last shot. And we're going to have a trial on the last shot. But I do think Officer Gorecki's conduct as a whole at the end of this narrative... Must be viewed in context. Yes. Okay. We understand. Thank you, Mr. Hazelbarth. Thanks very much. Court appreciates the excellent argument. We'll take the matter under advisement.